# LOUISVILLE & NASHVILLE RAILROAD CO. *v.* TROUT.

1. In an action to recover damages for personal injuries, where the recovery depends largely on the testimony of the plaintiff, and his testimony is attacked as being improbable, it is reversible error for the court to charge the jury: "In this connection I charge you that if a witness swear to an improbable story, that in itself would not be sufficient to discredit him, but slight circumstances in conflict therewith might or might not be sufficient to authorize a jury to disbelieve his testimony, as the jury might determine from all the facts and circumstances proven in the case. But if a witness swear to an impossible story, then the jury will be authorized to disregard his testimony entirely, without any conflicting evidence other than the circumstances surrounding his story."

2. For the reasons stated in the second division of this opinion, the following charge is inaccurate in the respects pointed out: "If he is entitled to recover at all, he is entitled to recover for the injury actually sustained, the pain and suffering endured, mental and physical; and as to this the law lays down no definite rule to govern the enlightened conscience of impartial jurors, so far as pain and suffering is concerned, and the rule is, not what you would have suffered it for, but what is plaintiff entitled to recover for the pain and suffering he has actually endured. He would also be entitled to recover for his lost time and doctor's bills paid out. If you find that his injuries are permanent and his capacity to labor has been decreased on that account, you will determine what you will allow for that, that is, on account of his decreased capacity to labor; determine what he was able to do at the time and just prior to the injury, and what he is able to do now. Find what his earning capacity was before and since, and the difference would be what he is entitled to recover on that account. Then you would get a fair average yearly value of his decreased capacity to labor, remembering that he might or might not have constant employment, that he might or might not continue to work, that he might voluntarily or otherwise abstain from labor, and further that as old age comes on his capacity to labor would naturally decrease; and having determined what

would be a fair average yearly value of his decreased capacity to labor, then determine his expectancy, that is, how long he would probably live; then multiply the fair average yearly value of his services by his years of expectancy, and this would be the gross sum; then get the present value of that at seven per cent., and that would be the amount, if any, you will find on that account, what you would allow him on account of decreased capacity to labor; then you would add together the various items, and the sum total would be the amount of your verdict."

JUNE 13, 1912.

Action for damages. Before Judge Fite. Gordon superior court. July 8, 1911.

*D. W. Blair, Tye, Peeples & Jordan,* and *O. N. Starr,* for plaintiff in error.

*Maddox, McCamy & Shumate* and *J. G. B. Erwin Jr.,* contra.

HILL, J. James W. Trout brought suit for damages against the Louisville & Nashville Railroad Company for alleged injuries to his person by the running of the defendant's train. On the trial of the case the jury returned a verdict for the plaintiff. A motion for a new trial was overruled, and the defendant excepted.

1. The only assignments of error that need be considered are those with reference to the charge of the court. The following charge is alleged to be error: "In this connection I charge you that if a witness swear to an improbable story, that in itself would not be sufficient to discredit him, but slight circumstances in conflict therewith might or might not be sufficient to authorize a jury to disbelieve his testimony, as the jury might determine from all the facts and circumstances proven in the case. But if a witness swear to an impossible story, then the jury will be authorized to disregard his testimony entirely, without any conflicting evidence other than the circumstances surrounding his story." It is insisted that this charge invades the province of the jury by instructing them the amount of credit that should be given to the witnesses in the case, it being the province of the jury to determine for themselves the amount of credibility that should be given the testimony of all witnesses in the case, as well as to determine for themselves what fact or facts would be sufficient to discredit the witness, without an expression of opinion from the court. Undoubtedly the credit to be given witnesses is for the jury. The court may have intended the use of the word "discredit" in the sense of impeach, but discrediting a witness is not confined to a

total rejection of his evidence. It is also used in the sense of disbelief in the accuracy of his testimony. It is not the province of the court to tell the jury what will discredit a witness. The jury may consider the evidence and determine for themselves what testimony is probable or improbable. The Minnesota Supreme Court has declared: "In all cases the positive testimony of an otherwise unimpeached witness can only be disregarded when its improbability or inconsistency furnishes a reasonable ground for doing so, and this improbability or inconsistency must appear from facts and circumstances disclosed by the evidence in the case. It can not be arbitrarily disregarded by either court or jury, for reasons resting wholly in their own minds, and not based upon anything appearing on the trial." Winona Bank *v.* Donald, 56 Minn. 491 (58 N. W. 269). The charge in the present case hereinabove quoted was calculated to confuse and mislead the jury, and to so instruct them is to invade their province, and is reversible error.

2. Complaint is also made of the following charge of the court to the jury: "If he is entitled to recover at all, he is entitled to recover for the injury actually sustained, the pain and suffering endured, mental and physical; and as to this the law lays down no definite rule to govern the enlightened conscience of impartial jurors, so far as pain and suffering is concerned, and the rule is, not what you would have suffered it for, but what is plaintiff entitled to recover for the pain and suffering he has actually endured. He would also be entitled to recover for his lost time and doctor's bills paid out. If you find that his injuries are permanent and his capacity to labor has been decreased on that account, you will determine what you will allow for that, that is, on account of his decreased capacity to labor; determine what he was able to do at the time and just prior to the injury and what he is able to do now. Find what his earning capacity was before and since, and the difference would be what he is entitled to recover on that account. Then you would get a fair average yearly value of his decreased capacity to labor, remembering that he might or might not have constant employment, that he might or might not continue to work, that he might voluntarily or otherwise abstain from labor, and further that as old age comes on his capacity to labor would naturally decrease; and having determined what would be a fair average yearly value of his decreased capacity to labor, then de-

termine his expectancy, that is, how long he would probably live; then multiply the fair average yearly value of his services by his years of expectancy, and this would be the gross sum; then get the present value of that at seven per cent., and that would be the amount, if any, you will find on that account, what you would allow him on account of decreased capacity to labor; then you would add together the various items, and the sum total would be the amount of your verdict." This charge is inaccurate in some respects; and as the case is to be returned for another hearing, we point out the inaccuracies. In the first place, the court instructed the jury, "find what his earning capacity was before and since, and the difference would be what he is entitled to recover on that account." The court doubtless meant to charge that in using the difference in earning capacity as a basis of calculation, they should ascertain what was the diminution of such capacity resulting from the conduct of the defendant. There was some evidence tending to show that the plaintiff suffered from some ailment before the injury. Other causes than the conduct of the defendant might bring about an impairment in his earning capacity. The defendant would only be liable for the result of its own conduct; and therefore it was inaccurate to charge that the difference between the earning capacity before the injury and afterwards furnished the measure of the damages which he was entitled to recover, without reference to the cause of such diminution. Again, at one point in the charge the jury were instructed to "multiply the fair average yearly value of his services by his years of expectancy, and this would be the gross sum." From the context it would seem that the judge did not mean "the fair average yearly value of his services," but the fair average yearly value of the decreased capacity to labor and earn money, resulting from the injury, if the plaintiff was entitled to recover therefor. Moreover, a recovery was sought both for special damages as to which there is one rule of calculating the amount recoverable, and also as to damages of another character touching which the amount is left to the enlightened conscience of impartial jurors. The reference to these different classes of damages claimed was such that the distinction was perhaps not as clearly drawn in the minds of the jury as it might have been; but these matters will doubtless be made more exact upon another trial.  *Judgment reversed. All the Justices concur.*